## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | | |
|---|---|---|
| JACKIE D. CONLEY, individually and on behalf of all others similarly situated, | §<br>§<br>§ | Docket No. _____ |
| Plaintiff, | §<br>§ | |
| v. | §<br>§ | JURY TRIAL DEMANDED |
| CABOT OIL AND GAS CORPORATION, | §<br>§<br>§ | CLASS/COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)/ |
| Defendant. | §<br>§<br>§ | FED. R. CIV. P. 23 |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### I.    SUMMARY

1.     Jackie D. Conley ("Conley") brings this lawsuit to recover unpaid overtime wages and other damages from Cabot Oil and Gas Corporation ("Cabot") under the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act, 43 Pa. Stat. Ann. § 333.104 ("PMWA").

2.     Cabot and the other workers like him regularly worked for Cabot in excess of forty (40) hours each week.

3.     But these workers never received overtime for hours worked in excess of forty (40) hours in a single workweek.

4.     Instead of paying overtime as required by the FLSA and the PMWA, Cabot improperly classified Conley and those similarly situated workers as independent contractors and paid them a daily rate with no overtime compensation.

5.     This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## II.   JURISDICTION AND VENUE

6.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7.     The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d).

8.     The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

10.     Conley and other Putative Class Members performed work related tasks for Cabot in this District and Division.

## III.   THE PARTIES

11.     Conley worked for Cabot as a Company Man from approximately 2013 to 2015 in Pennsylvania.

12.     Throughout his employment with Cabot, he was paid a day-rate with no overtime compensation and was classified as an independent contractor.

13.     His consent to be a party plaintiff is attached as Exhibit A.

14.     Conley brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by Cabot's day-rate system. Cabot paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

15.     The class of similarly situated employees or potential class members sought to be certified is defined as follows:

> **All current and former independent contractors/consultants who worked for or on behalf of Cabot Oil and Gas Corporation during the past 3 years who were paid a day-rate.**

2

16.     Conley also seeks class certification of such a class under FED. R. CIV. P. 23 under the PMWA.

17.     Defendant Cabot Oil and Gas Corporation can be served through its registered agent of process: CT Corporation System, 1999 Bran St., Ste. 900 Dallas, Texas 75201.  Cabot has a regional office at 2000 Park Lane, Suite 300, Pittsburgh, PA 15275.

### IV.     COVERAGE UNDER THE FLSA

18.     At all times hereinafter mentioned, Cabot has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

19.     At all times hereinafter mentioned, Cabot has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

20.     At all times hereinafter mentioned, Cabot has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce by any person and in that Cabot has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

21.     At all times hereinafter mentioned, Conley and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

22.     As will be shown through this litigation, Cabot treated Conley (and indeed all of its workers that it classified as independent contractors and paid a daily rate to without overtime compensation) as employees and uniformly dictated the pay practices applicable to Conley and its other workers including its so-called "independent contractors."

3

23.     Cabot's misclassification of Conley as independent contractors does not alter his status as an employee for purposes of the FLSA or the PMWA.

## V.     FACTS

24.     Cabot is an oil and natural gas exploration and production company operating worldwide and throughout the United States, including in Pennsylvania.

25.     To provide services to many of its customers, Cabot contracts with certain companies to provide it with personnel to perform the necessary work.

26.     Many of these individuals worked for Cabot on a day-rate basis, were misclassified as independent contractors, and make up the proposed Putative Class. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

27.     Cabot classified all of these workers as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

28.     For example, Conley worked for Cabot as a Company Man.

29.     Throughout his employment with Cabot, he was classified as an independent contractor and paid on a day-rate basis.

30.     As a Company Man, Conley's primary job duties included operating oilfield machinery, performing maintenance on the equipment used, working with other oilfield employees to ensure the objections and missions of Cabot are completed, and enforcing Cabot's policies and procedures.

31.     Conley worked well in excess of 40 hours each week while employed by Cabot, often for weeks at time.

32.     The work Conley performed was an essential party of Cabot's core business.

33.     During Conley's employment with Cabot while he was classified as an independent contractor, Cabot and/or the client it contracted with exercised control over all aspects of his job.

34.     Cabot did not require any substantial investment by Conley in order for him to perform the work required of him.

35.     Cabot determined Conley's opportunity for profit and loss.  Conley was not required to possess any unique or specialized skillset (other than that maintained by all other employees in his respective position) to perform his job duties.

36.     Conley worked for Cabot as an independent contractor from approximately 2013 to 2015.

37.     Indeed, Cabot and/or the client it contracted with controlled all of the significant or meaningful aspects of the job duties performed by Conley.

38.     Cabot ordered the hours and locations Conley worked, tools used, and rates of pay received.

39.     Even though Conley often worked away from Cabot's offices without the presence of a direct supervisor employed by Cabot, Cabot still controlled all aspects of Conley's job activities by enforcing mandatory compliance with Cabot's and/or its client's policies and procedures.

40.     No real investment was required of Conley to perform his job.

41.     More often than not, Conley utilized equipment provided by Cabot and/or its clients to perform his job duties.

42.     Conley did not provide the equipment he worked with on a daily basis.

43.     Cabot and/or its clients made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Conley worked.

44.     Conley did not incur operating expenses like rent, payroll, marketing, and insurance.

45.     Conley was economically dependent on Cabot during his employment.

46.     Cabot set Conley's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for Cabot.

47.     Cabot directly determined Conley's opportunity for profit and loss.  Conley's earning opportunity was based on the number of days Cabot scheduled him to work.

48.     Very little skill, training, or initiative was required of Conley to perform his job duties.

49.     The daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Cabot and/or its clients. Virtually every job function was pre-determined by Cabot and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. The Putative Class Members were prohibited from varying their job duties outside of pre-determined parameters.

50.     For the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to servicing energy operations in the field.

51.     Conley performed routine duties that were largely dictated by Cabot and/or its clients.

52.     Conley was not employed by Cabot on a project-by-project basis.  In fact, while Conley was classified as an independent contractor, he was regularly on call for Cabot and/or its clients and was expected to drop everything and work whenever needed.

53.     All of the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

54.     The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

55.     Cabot's policy of failing to pay their independent contractors, including Conley, overtime violates the FLSA and PMWA because these workers are, for all purposes, employees performing non-exempt job duties.

56.     Because Conley (and Cabot's other independent contractors) was misclassified as an independent contractor by Cabot, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

57.     Cabot's day-rate system violates the FLSA and the PMWA because Conley and those similarly situated did not receive any overtime pay for hours worked over 40 hours each week.

## VI.     FLSA VIOLATIONS

58.     As set forth herein, Cabot has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of forty (40) hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

59.     Cabot knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. Cabot's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

60.     Accordingly, Conley and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

## VII.     PMWA VIOLATIONS

61.     Conley brings this claim under the PMWA as a Rule 23 class action.

62.     The conduct alleged violates the PMWA (43 Pa. Stat. Ann. § 333.104).

63.     At all relevant times, Cabot was subject to the requirements of the PMWA.

64.     At all relevant times, Cabot employed Conley and each Class Member with Pennsylvania state law claims as an "employee" within the meaning of the PMWA.

65.     The PMWA requires employers like Cabot to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week. Conley and each member of the Pennsylvania Class are entitled to overtime pay under the PMWA.

66.     Cabot had a policy and practice of misclassifying Conley and each member of the Pennsylvania class as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

67.     Conley and each member of the Pennsylvania Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

68.     Conley and each member of the Pennsylvania Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Cabot, as provided by the PMWA.

## VIII.   CLASS AND COLLECTIVE ACTION ALLEGATIONS

69.     Conley incorporates all previous paragraphs and alleges that the illegal pay practices Cabot imposed on Conley were likewise imposed on the members of the Classes.

70.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the state wage laws of Pennsylvania.

71.     Numerous other individuals who worked with Conley indicated they were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

72.     Based on his experiences and tenure with Cabot, Conley is aware that Cabot's illegal practices were imposed on the members of the Classes.

73.     The members of the Classes were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

74.     Cabot's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the members of the Classes.

75.     Conley's experiences are therefore typical of the experiences of the members of the Classes.

76.     The specific job titles or precise job locations of the various members of the Classes do not prevent class or collective treatment.

77.     Conley has no interests contrary to, or in conflict with, the members of the Classes. Like each member of the Classes, Conley has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

78.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

79.     Absent this action, many members of the Classes likely will not obtain redress of their injuries and Cabot will reap the unjust benefits of violating the FLSA and applicable state labor laws.

80.     Furthermore, even if some of the members of the Classes could afford individual litigation against Cabot, it would be unduly burdensome to the judicial system.

81.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

82.     The questions of law and fact common to each of the members of the Classes predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

       a.     Whether Cabot employed the members of the Classes within the meaning of the applicable state and federal statutes, including the FLSA and the PMWA;

b.    Whether the members of the Classes were improperly misclassified as independent contractors;

c.    Whether Cabot's decision to classify the members of the Classes as independent contractors was made in good faith;

d.    Whether Cabot's decision to not pay time and a half for overtime to the members of the Classes was made in good faith;

e.    Whether Cabot's violation of the FLSA and the PMWA was willful; and

f.    Whether Cabot's illegal pay practices were applied uniformly across the nation to all members of the Classes.

83.    Conley's claims are typical of the claims of the members of the Classes. Conley and the members of the Classes sustained damages arising out of Cabot's illegal and uniform employment policy.

84.    Conley knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

85.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## IX.    JURY DEMAND

86.    Conley demands a trial by jury.

## X.    RELIEF SOUGHT

87.    WHEREFORE, Conley prays for judgment against Cabot as follows:

a.    An Order designating the Potential Putative FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely

10

FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.    For an Order pursuant to Section 16(b) of the FLSA finding Cabot liable for unpaid back wages due to Conley and the Potential Putative FLSA Class for liquidated damages equal in amount to their unpaid compensation;

c.    For an Order designating the state law classes as class actions pursuant to Fed. R. Civ. P. 23;

d.    For an Order appointing Conley and his counsel as Class Counsel to represent the interests of the both the federal and state law classes;

e.    For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

f.    For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By:  */s/ Joshua P. Geist*
    Joshua P. Geist
    PA. I.D. No. 85745
    **GOODRICH & GEIST, P.C.**
    3634 California Ave.
    Pittsburgh, PA 15212
    Tel: (412) 766-1455
    Fax: (412)766-0300
    josh@goodrichandgeist.com

    **AND**

    Michael A. Josephson
    Pennsylvania Bar No. 308410
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    (*Pending Pro Hac Vice*)
    **JOSEPHSON DUNLAP LAW FIRM**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

    **AND**

    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    (*Pending Pro Hac Vice*)
    **BRUCKNER BURCH, P.L.L.C.**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**